470 So.2d 465 (1985)
R.D. BOZEMAN, et al.
v.
COMMONWEALTH LAND TITLE INSURANCE COMPANY.
No. CA 84 0396.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
Stay Order Denied July 3, 1985.
*466 John L. Dardenne, Jr., Baton Rouge, for plaintiffs-appellees R.D. Bozeman and Charles L. Valluzzo.
William C. Shockey, Baton Rouge, for defendant-appellant Commonwealth Land Title Ins. Co.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
GROVER L. COVINGTON, Chief Judge.
The defendant, Commonwealth Land Title Insurance Company (Commonwealth), appeals a judgment in favor of its insureds, R.D. Bozeman[1] and Charles L. Valluzzo (Bozeman and Valluzzo), for losses sustained because of the unmarketability of the title to a tract of land located in East Baton Rouge Parish. The trial court awarded Bozeman and Valluzzo $96,735.83, but denied penalties and attorney fees. We affirm.
The facts surrounding this controversy are not seriously in dispute. In the latter part of 1978, Bozeman and Valluzzo agreed to purchase 3.63 acres of land at Gardere Lane and Hermitage Parkway from Omni Square Corporation for the price of $210,526.40. Their attorney, Peter Arbour, was requested to examine title to the property. The attorney reported in his title opinion that there was a 50-foot servitude of passage in favor of the Gianelloni family traversing the property. The purchasers considered the servitude an unacceptable burden because it permitted the building of a pipeline for the transportation of oil and gas from a drilling site on adjacent property. After unsuccessful attempts by Omni Square Corporation to have the servitude removed, it was agreed, as an inducement to the purchasers, that the seller would purchase a title insurance policy to be written without exception to the 50-foot servitude. Sidney Fazio, an agent for Commonwealth, was called by Omni Square's attorney concerning the writing of the title policy "insuring over" the servitude. This agreement was confirmed by letter of December 19, 1978, from Arbour to Fazio, in which it was stated that not only would Commonwealth write a $300,000.00 policy insuring over the servitude for Bozeman and Valluzzo, but also Commonwealth would insure the title without exception for a future purchaser from Bozeman and Valluzzo, at no cost to either purchaser or seller. Fazio testified that he was familiar with the property and was optimistic that the servitude could be removed within a short time.
On December 19, 1978, Bozeman and Valluzzo took title to the property, and also executed a mortgage in favor of American Bank & Trust Co. for the full amount of the purchase price. After unsuccessfully trying to sell the property for a year and a half, they entered into a purchase agreement with Joseph T. Spinoza in June of 1980. Upon Spinoza learning of the servitude and its possible uses, he refused to take title, and plaintiffs' attorney made demand on Commonwealth to pay the policy limits based on the unmarketability of the title to the property due to the servitude. Commonwealth denied coverage, and this suit followed. Two days before trial the property was sold for $236,000.00, reducing the plaintiff's loss to $105,735.83, the amount of the interest on the mortgage to American Bank during the period from January 19, 1981, the date when Spinoza would *467 have purchased the property, until the sale on July 11, 1983. Plaintiffs also sought penalties and attorney fees under LSA-R.S. 22:658 for Commonwealth's failure to timely pay the claim.
Commonwealth raised several defenses, but principally relied on the policy's exclusion clause and the letter of December 19, 1978 to avoid coverage. Commonwealth additionally contends that plaintiffs failed to mitigate their damages, and thus should not be allowed to recover. Bozeman and Valluzzo answered the appeal seeking penalties and attorney fees.
The first issue raised by Commonwealth concerns one of the exclusions from coverage contained in the printed policy, which reads in part, as follows:
The following matters are expressly excluded from the coverage of this policy:....
3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; ...
Commonwealth contends that, since Bozeman and Valluzzo knew of the existence of the 50-foot servitude and chose to purchase the property anyway, they "suffered, assumed or agreed to" the servitude, and thus agreed to exclude coverage of any loss resulting from it. Bozeman and Valluzzo contend that the purpose of the title insurance policy was to protect them from any loss because of the servitude.
Title insurance is defined in LSA-R.S. 22:6(9) as follows: "Insurance of owners of property ... against loss by encumbrance, or defective titles, or adverse claim to title, and services connected therewith." The policy must contain the entire contract and any rider or endorsement intended to modify the policy provisions must be in writing and attached to the policy. LSA-R.S. 22:628. Nevertheless, the insurer may limit its liability, exclude from coverage any matter, or impose any conditions on its obligations to the insured which are not prohibited by law or against public policy. However, such exclusion must be specific and unambiguous. There is also no prohibition against an insurer extending coverage for a known risk. See LSA-R.S. 22:620; Hall v. National Life and Accident Insurance Company, 383 So.2d 74 (La.App. 3rd Cir.1980).
Thus, the insured may show that the exclusion in the policy will not operate to defeat coverage where the insurer agreed to accept the risk. In short, an exclusion may not be used to defeat coverage where the insurer was informed of the "defect" in the title and agreed to insure against loss occasioned by such defect. Here, the company's agent issued the policy with full knowledge of the servitude, accepted the risk, and agreed to insure "over" the servitude in future policies as well. As this term, "insured over", is used in the title insurance industry, it means insuring the title to property in spite of and without exception to a known defect. We find no merit in Commonwealth's contention that the printed exclusion applies where the insurer knowingly insured over the defect.
Commonwealth's second contention concerns the December 19, 1978 letter from Arbour to Fazio. The pertinent part of the letter reads as follows:
"... In accordance with our phone conversation, it is our understanding that you will issue to Mr. Bozeman and Mr. Valluzzo an owner's policy of title insurance on this tract in the sum of $300,000. It is our understanding that this owner's policy will not except for the 50-foot servitude of passage across the rear of the tract.
It is our further understanding that, should it be necessary, you will issue to anyone purchasing this tract or a portion thereof, from Mr. Bozeman and Mr. Valluzzo, an owner's or mortgagee policy in a sum sufficient to cover the interest of the purchasers. It is our understanding that these policies will be issued without an exception for the 50-foot servitude of passage and at no cost to Mr. Bozeman or Valluzzo. It is our further understanding that this obligation to provide *468 such policies of title insurance, as described above, shall continue for so long as the 50-foot servitude of passage remains on the tract.
Commonwealth argues that this letter constitutes an endorsement or rider to the policy; and, further, redefines the obligations of the insurer relative to the servitude. Bozeman and Valluzzo objected to the introduction of the letter on the grounds that the parol evidence rule excludes extrinsic evidence to vary the terms of the policy. Bozeman and Valluzzo point out that this letter was not attached to the policy and was never intended to be an endorsement to the policy. LSA-R.S. 22:628 and paragraph 12 of the policy require that any endorsement or modification to the insurance policy must be physically attached to it or incorporated by specific reference to the policy. Commonwealth cites Valhi, Inc. v. Zapata Corporation, 365 So.2d 867 (La.App. 4th Cir.1978), as authority for an exception to this rule. The Valhi case is factually distinguishable. The side agreement in the Valhi case made specific reference to the policy, even though it was not attached to the policy. Since the trial court allowed the letter to be introduced in evidence, we will consider Commonwealth's argument concerning its effect on this case. Under Commonwealth's appreciation of the effect of the letter, its only obligation would be to continue to issue title insurance policies without exception to the servitude, but without any obligation to respond in damages to any insured should the servitude cause a loss either because of the unmarketability of the title or from damages resulting from the exercise of the servitude by its owners. The trial court determined that this letter was merely a memorandum of understanding between Arbour and Fazio as to the contents of the title policy to be issued to Bozeman and Valluzzo, and further as to the future obligations of Commonwealth to continue issuing title policies to a purchaser of the property if Bozeman and Valluzzo so required.
LSA-R.S. 22:623 prohibits the insurer from lessening the coverage provided in the standard form printed policy by endorsement or rider. The purpose of an insurance policy is to impose an obligation on the insurance company to respond in damages in the event that the insured suffers a loss covered by the terms of the policy. There can be no purpose served or protection afforded to a prospective purchaser if the policy does not obligate the company to pay for the loss suffered by the insured as a result of some risk covered by the policy. We find that the purpose of the letter was to enlarge Commonwealth's coverage, not limit it.
Commonwealth also contends that the December 19, 1978 letter creates an ambiguity, or is evidence of a lack of understanding between the insurer and the insured. It is well settled that where a provision of the policy is ambiguous or, when read with other parts of the policy, the meaning of the policy becomes ambiguous, the ambiguity will be resolved in favor of the insured. Benton Casing Services, Inc. v. Avemco Insurance Company, 379 So.2d 225, (La.1979).
Lastly, Commonwealth argues that Bozeman and Valluzzo sold the property for far less than market value, constituting a breach of their obligation to mitigate damages. There is no merit in this argument. The testimony established that the property had been on the market for a year and a half before Spinoza offered to purchase it in June of 1980. By July of 1983 it had been for sale for over four years. We find that the trial court correctly awarded plaintiffs the amount of interest they paid to American Bank since the date on which the sale to Spinoza should have taken place, less the profit plaintiffs received when the property was sold.
Concerning plaintiffs' assertion that they should have been awarded penalties and attorney fees, we agree with the trial court that there was a bona fide question of liability. Since LSA-R.S. 22:658 is penal in nature, it is to be strictly construed and the sanctions should be imposed only in those instances in which the facts *469 negate probable cause for non-payment. Cole v. State Farm Mutual Automobile Insurance Company, 427 So.2d 522 (La. App. 3rd Cir.1983), writ denied 433 So.2d 710 (La.1983).
After a thorough review of the record, and for the reasons assigned, we find that the judgment of the trial court is correct. It is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] As shown in his sworn testimony and in authentic acts introducing evidence, his true name is Roydan Douglas Bozeman, Jr.