# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 16, 2011

Lyle W. Cayce
Clerk

No. 10-30746
Summary Calendar

AUNT SALLY'S PRALINE SHOP, INCORPORATED,

Plaintiff-Appellee,

v.

UNITED FIRE & CASUALTY COMPANY, INCORPORATED,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
USDC No. 2:06-CV-7674

Before KING, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a suit filed by Aunt Sally's Praline Shop, Inc. seeking payments for hurricane damage pursuant to an insurance policy issued by United Fire & Casualty Company Inc. After two trials before a jury, the district court entered judgment against United Fire for $454,246.00

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

No. 10-30746

in damages and $100,000 in penalties under Louisiana law. United Fire appeals, challenging the district court's decision to exclude some of United Fire's defenses, certain of the district court's evidentiary rulings, and the sufficiency of the evidence to support the jury's verdict. We AFFIRM.

## I

Aunt Sally's manufactures and sells pralines — sweet confections made of sugar, cream, butter and pecans — as well as other merchandise from its stores in New Orleans. Its facilities suffered extensive damage when Hurricane Katrina hit New Orleans on August 29, 2005. Aunt Sally's had a commercial property and liability insurance policy with United Fire. It therefore made a claim under its United Fire policy seeking payment for damages caused by the hurricane, including damages for lost business income. United Fire initially denied its claims. After further discussions, United Fire eventually paid some of Aunt Sally's claims, but nothing approaching the total of the damages for which Aunt Sally's believed United Fire was responsible.

Aunt Sally's filed a lawsuit in Louisiana state court against United Fire seeking damages and penalties under Louisiana state law for United Fire's failure to make contractually required insurance payments. United Fire properly removed the case to the United States District Court for the Eastern District of Louisiana. In its answer — which was filed in December 2006 — United Fire claimed (among other things) that Aunt Sally's had failed to state a claim, that it was contributorily negligent, that it had failed to mitigate its damages and that the damage incurred by Aunt Sally's was caused by third parties. United Fire also included in its answer a broad invocation of "all provisions, limitations, exclusions and endorsements" stated in its insurance policy with Aunt Sally's. It did not, however, specifically plead any policy

No. 10-30746

exclusion as an affirmative defense. Supplemental petitions and answers were filed in 2007, which also did not mention any specific policy exclusions.

More than 18 months of discovery and other pre-trial proceedings followed United Fire's initial answer. A few weeks before the scheduled trial date in June 2008, United Fire declared its intention to raise specific policy exclusions at trial. At the pretrial conference, United Fire enumerated each of the policy exclusions it intended to assert. Aunt Sally's filed a motion *in limine* seeking to prohibit United Fire from belatedly asserting those defenses, citing the prejudice it would suffer in attempting to refute United Fire's arguments without the benefit of discovery. The district court agreed and granted Aunt Sally's motion. Although the trial date was then continued at United Fire's request for several months, the district court agreed to the continuance on the basis of keeping the case in its then current posture. That is, no further amendments to the pleadings, no additional discovery and no further deadline extensions. Although United Fire later asked for another continuance, trial was scheduled for, and commenced on, September 29, 2008. At the conclusion of trial, the jury found in favor of Aunt Sally's on all claims, and returned a verdict of $364,671.00 in damages and $114,234.00 in penalties. That award was based on the jury's specific finding, as required under Louisiana law, that United Fire's failure to pay Aunt Sally's claims was arbitrary, capricious or without probable cause.

United Fire then filed a motion for new trial on several bases. The district court granted that motion in part, holding that a new trial was necessary to determine how long it had taken to restore Aunt Sally's location on Chartres Street in New Orleans after the hurricane, the quantum of "business income" damages for both of Aunt Sally's locations and the period and quantum for "extended business income" and penalties. However, the

3

court rejected United Fire's motion for a new trial with respect to the court's decision to grant the policy exclusion *in limine* motion.  Before the second, limited trial commenced, United Fire filed a motion *in limine* seeking to exclude evidence with respect to damages that may have been incurred by Aunt Sally's between the first and second trials. The court denied United Fire's motion, and the second trial commenced on November 2, 2009.

Aunt Sally's first witness at this trial was its CEO, Frank Simoncioni. He testified broadly with respect to Aunt Sally's business, the damage incurred by the business during the hurricane and its efforts to recover from the storm.  Simoncioni also attempted to testify about Aunt Sally's potential net income had Katrina not struck. United Fire objected, saying that Simoncioni's testimony was improper speculation.  The district judge overruled United Fire's objection, holding that Simoncioni's testimony was permissible lay opinion testimony of a witness with knowledge of Aunt Sally's value and business prospects.  The judge instructed United Fire's counsel, however, that it was permitted to vigorously challenge Simoncioni's conclusions.  The jury again returned a verdict for Aunt Sally's, and therefore awarded additional damages and penalties.  United Fire then filed a motion for judgment as a matter of law and a motion for new trial. The district court denied both motions. This appeal ensued. United Fire appeals four issues: (1) the district court's exclusion of United Fire's policy exclusions; (2) the district court's admission of Simoncioni's testimony, and thus the jury's award of damages and penalties; and (3) the sufficiency of the evidence to support the jury's verdict.  We discuss these claims in turn.

## II

### A.     United Fire's Failure to Plead its Policy Exclusions

United Fire challenges the district court's decision to prevent United Fire from asserting its policy exclusions at trial. Rule 8(c) requires a defendant to "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff fair notice of the defense that is being advanced." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (internal quotation marks omitted). "In the years since adoption of the rule, the residuary clause [of Rule 8(c)] has provided the authority for a substantial number of additional defenses which must be timely and affirmatively pleaded.  These include: exclusions from a policy of liability insurance . . . ." *Ingraham v. United States*, 808 F.2d 1075, 1078 (5th Cir. 1987).   In a diversity case, state law determines what constitutes an affirmative defense for the purposes of Rule 8(c).  *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986).

It is clear that in the general case, a policy exclusion is an affirmative defense under Louisiana law that must be pleaded specifically. *See, e.g*, *Griffin v. Schwegman Bros. Giant Supermarkets, Inc.*, 542 So.2d 710, 714 (La. App. 4th Cir. 1989).  *Sher v. Lafayette Ins. Co.*, 988 So.2d 286 (La. 2008) is not to the contrary.  There, although the Louisiana Supreme Court did leave the exact contours of the pleading requirements for contract exclusions open,  the court held that "in the specific case" where the plaintiff itself had raised the policy exclusions in its petition —   that is, where the plaintiff had put the policy exclusions into question — the courts below had erred in finding that policy exclusions were affirmative defenses.  That fact-based holding has no

5

application here, where not even United Fire alleges that Aunt Sally's put the policy exclusions into play, and where it is clear that United Fire's late invocation of the exclusions raised new matters for trial. *See Sher*, 988 So.2d at 203-204; *see also Williams v. Allstate Indem. Co.*, 2009 WL 723526 No. 07-6797, at *3-4 (E.D.La. Mar. 19, 2009) (recognizing that *Sher* created only a "slim exception" to the general rule). Thus, the policy exclusions here were affirmative defenses that had to be pleaded specifically. Contrary to United Fire's assertions, they were not.

To be sure, a technical failure to comply precisely with Rule 8(c) is not fatal. *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 895 (5th Cir. 1983). Rather, it is left up to the discretion of the trial court to determine whether the party against whom the unpleaded affirmative defense has been raised has suffered prejudice or unfair surprise. *Id*. Thus, we review a district court's decision to prevent a party from untimely pleading an affirmative defense under Rule 8(c) for abuse of discretion.

United Fire argues that the district court erred in foreclosing its policy exclusion arguments because Aunt Sally's would have suffered no prejudice had it been forced to address United Fire's policy exclusions. We disagree. As United Fire's own brief shows, litigating the policy exclusions would have been a highly fact intensive exercise. For example, one of the exclusions United Fire attempted to raise was for loss of market. That is, United Fire tried to argue that the real reason Aunt Sally's lost money was not because of actual loss arising from direct physical damage (which is covered) but because people had stopped visiting New Orleans (which might not be covered). It is obvious that Aunt Sally's response to that argument depends on factual development, on consultation with experts, and on the opportunity to test the scope of the legal applicability of the exclusion through dispositive motions.

Indeed, United Fire effectively concedes the point by claiming that the necessary factual development could have been achieved by reopening discovery in the three months between the time United Fire belatedly raised its policy exclusions and the delayed start of trial.  That a trial court could have further delayed trial or reopened fact discovery just months before an already delayed trial date does not mean it was required to do so, especially when the party seeking relief could have raised its new arguments years previously.  We find no abuse of discretion in the district court's decision to exclude the policy exclusion defenses from trial.

**B.     The Jury's Award of Damages and Penalties under Louisiana Law**

United Fire next contends that the district court erred by admitting Simoncioni's testimony as to Aunt Sally's potential net income, over United Fire's objection.  Because that testimony was the sole basis for the jury's award of consequential damages and penalties under Louisiana insurance law, United Fire argues, the jury's award must be reversed.  We disagree.

It is well-settled that a business owner or officer who has personal knowledge of the facts may testify as to the business prospects of that business.  *See Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010) (permitting a business's president to testify as to the losses in income as a result of a hurricane); *see also Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) (citing with approval *Miss. Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373-374 (5th Cir. 2002) (holding that a corporation's director of risk management could testify to lost profits)).

Here, it is evident from the record that, as CEO, Simoncioni had personal knowledge of Aunt Sally's business prospects and could properly testify as to Aunt Sally's potential net income. That Simoncioni's testimony was based on new investments in equipment rather than purely historical figures does nothing to change that conclusion. In fact, the only case on which United Fire relies supports the propriety of Simoncioni's testimony. In *DIJO Inc. v. Hilton Hotels Corp.*, 351 F.3d 679 (5th Cir. 2003), this court found that a financial consultant who was not an employee or officer of the company at issue could not offer lay testimony as to the company's value. In so holding, the court observed that Federal Rule of Evidence 701 does not "place any restrictions on the . . . practice of allowing business owners or officers to testify based on particularized knowledge derived from their position." *DIJO*, 351 F.3d at 685. Therefore, there was no error in permitting Simoncioni to testify.

In the alternative, United Fire argues that the district court erred by failing to limit evidence of damages that occurred between the first and second trials. Its claim is that if its limited motion for a new trial was justified, then its failure to pay until the second trial could not be arbitrary, capricious or without probable cause as a matter of law. But United Fire has provided the court with no authority for that novel proposition, and we have found none. Therefore, the district court did not err by allowing the question of whether Aunt Sally's was due payment for damages that occurred between the two trials to go to the jury.

## C. Insufficiency of Evidence

United Fire next asserts that the evidence was insufficient to support two of the jury's findings. First, United Fire disputes the jury's finding that hurricane damage to the Chartres Street facility caused the suspension of

No. 10-30746

Aunt Sally's business. Second, United Fire argues that the jury erred in awarding damages for betterments and improvements, business personal property and extra expenses. This court upholds a jury verdict unless "there is no legally sufficient evidentiary basis for a reasonable jury to find" as it did. *Vadie v. Mississippi State University,* 218 F.3d 365, 372 (5th Cir. 2000).

As to the Chartres Street facility, the evidence with respect to the connection between the hurricane damage and the suspension of Aunt Sally's business at that location was more than sufficient to provide a basis for the jury's finding. For example, Aunt Sally's presented testimony that damages sustained to the Chartres location caused the suspension of operations. Moreover, evidence at trial showed that even as production at the facility started again in the wake of Katrina, it was many months before full operations were restored. While it may be true that the damage to the Chartres Street facility could have been more severe, that is not a basis on which to reverse a jury's verdict. Similarly, United Fire's argument that there is insufficient evidence supporting the jury's award for betterments and improvements, business personal property and extra expenses also fails. Those awards were also based on evidence in the record showing that the damage at issue was caused by water damage, including testimony by United Fire's own employees. The jury could very easily have credited that testimony. Therefore, the jury's verdict was supported by the evidence.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.