# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 31, 2013

Lyle W. Cayce
Clerk

No. 12–30010

LEVY GARDENS PARTNERS 2007, L.P.,

Plaintiff – Appellant

v.

COMMONWEALTH LAND TITLE INSURANCE COMPANY,

Defendant – Appellee

------------------------------------------------------------------------------------------------------------

LEVY GARDENS PARTNERS 2007, L.P.,

Plaintiff – Appellant Cross-Appellee

COMMONWEALTH LAND TITLE INSURANCE COMPANY,

Defendant – Appellee Cross-Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and GARZA and ELROD, Circuit Judges.
EMILIO M. GARZA, Circuit Judge:

Levy Gardens Partners 2007, L.P. ("Levy Gardens") appeals the district court's decision following a bench trial ordering Commonwealth Land Title Insurance Company ("Commonwealth") to pay Levy Gardens $605,000 pursuant to Levy Gardens's title insurance policy with Commonwealth. Levy Gardens asserts it is entitled to over $7 million under the insurance policy.

No. 12–30010

Commonwealth cross-appeals the district court's grant of any relief to Levy Gardens, asserting the insurance policy does not insure against any of Levy Gardens's losses. We AFFIRM.

I

This case arises out of a failed Levy Gardens multi-family housing project in New Orleans. In November of 2007, the City of New Orleans, Department of Safety and Permits sent Levy Gardens a letter stating the zoning determination of its property was "R.O.," which permits multi-family housing. The City then issued Levy Gardens four building permits for the property. The City's law department subsequently sent Levy Gardens an opinion letter originally prepared for a city councilmember, advising that its proper zoning designation was R.O. Afterward, Levy Gardens purchased title insurance from Commonwealth in connection with this project on October 7, 2008. Section 8 under the "Conditions" heading in this insurance policy reads in relevant part:

> 8. DETERMINATION AND EXTENT OF LIABILITY
> This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.
> (a) The extent of liability of the Company for loss or damage under this policy shall not exceed the least of
>> (i) the Amount of Insurance
>> . . .
>> (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy
>> . . .

Section 3 under the same heading requires the insured to give the insurer notice of claims, stating:

> 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT
> The insured shall notify the Company promptly in writing . . . in case of any litigation as set forth in

2

No. 12–30010

Section 5(A) of these Conditions. . . . If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

This insurance policy also includes a "zoning endorsement" that reads:

1.    The Company insures against loss or damage sustained by the insured in the event that, at the Date of Policy,

    a.    According to applicable zoning ordinances and amendments, the Land is not classified Zone RO (as to that portion of Lot L that was Lot 3A-6-1A-1) & B2 (as to that portion of Lot L that was Lot 3A-6-1A-2C);

    b.    The following use or uses are not allowed under that classification: multifamily housing (as to that portion of Lot L that was Lot 3A-6-1A01); parking (as to that portion of Lot L that was Lot 3A-6-1A-2C).

2.    There shall be no liability under this endorsement based on

    a.    Lack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses. This paragraph 2.a. does not modify or limit the coverage provided in Covered Risk 5.

    b.    The invalidity of the zoning ordinances and amendments until after a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses.

    c.    The refusal of any person to purchase, lease or lend money on the Title covered by this policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the

3

No. 12–30010

> terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

The insurance policy limit is $18,323,070.

The East New Orleans Neighborhood Advisory Commission ("ENONAC"), a state body, filed suit in state court seeking a writ of mandamus, and on November 12, 2008 the state civil district court ordered the City to determine which parts of Levy Gardens's property were properly designated R.O. (the "2008 judgment"). The City complied with the mandamus order by filing an affidavit from the director of the Department of Safety and Permits that found all of Levy Gardens's property was properly designated R.O.

After the 2008 judgment, the City Council of New Orleans passed an ordinance that required enforcement of the most restrictive regulations that apply to Levy Gardens's property (the "2008 ordinance"). ENONAC then brought another suit in state civil district court seeking a preliminary injunction based on the 2008 ordinance. The state court held Levy Gardens's desired use was prohibited under an ordinance passed in 1985 (the "1985 ordinance"). The state court held the 1985 ordinance was not overridden by the Comprehensive Zoning Ordinance passed in 1995 (the "1995 CZO"), which, were it not for the 1985 ordinance, would have allowed Levy Gardens's desired use. The state court applied the 1985 ordinance over the 1995 CZO for two reasons. First, the 1995 CZO states in part, "Whenever these regulations contain an actual, implied, or apparent conflict, the more restrictive regulation shall apply unless specified otherwise." Second, the 2008 ordinance, like the 1995 CZO, requires application of the most restrictive regulations to Levy Gardens's property. Because the 1985

4

ordinance is more restrictive than the 1995 CZO, and because the 1995 CZO does not expressly repeal the 1985 ordinance, the state court held the 1995 CZO and the 2008 ordinance require application of the 1985 ordinance to Levy Gardens's property. Therefore, the state court issued a preliminary injunction enjoining Levy Gardens from building unless Levy Gardens successfully underwent a "conditional use process" to secure special permission from the city council to be exempt from zoning regulations (the "2009 judgment").

Levy Gardens then notified Commonwealth of the litigation, but referenced the incorrect policy number in its letter. Levy Gardens appealed the decision, and the Louisiana Fourth Circuit Court of Appeal affirmed the trial court. The Louisiana Supreme Court denied certiorari.

Levy Gardens then resumed contacting Commonwealth, at first using the incorrect policy number again. Levy Gardens and Commonwealth exchanged many letters, mostly sent by Levy Gardens, but Levy Gardens did not actually review the policy until later. Levy Gardens ultimately instituted the instant action in state court, then, after a non-diverse defendant was dismissed, removed it to federal district court. The district court first granted summary judgment to Levy Gardens, finding the insurance policy provided Levy Gardens with coverage. The district court then held a bench trial on the amount of damages. The district court issued its judgment in an oral decision, making five findings: (1) Levy Gardens is entitled to only the diminution in value of the property as a result of the application of the 1985 ordinance; (2) the meaning of "loss or damage" in the zoning endorsement is defined by Section 8 of the policy to mean loss in value of the title because the policy is not ambiguous in this regard; (3) the zoning endorsement is not stand-alone coverage; (4) Commonwealth's conduct does not warrant statutory penalties; and (5) Levy Gardens is entitled to $605,000, which is the difference in value between the title

of its insured property with and without the 1985 ordinance zoning encumbrance.

Levy Gardens appealed, asserting the policy covers all of its losses resulting from the application of the 1985 ordinance, including the money it spent on preparing for development. Levy Gardens also asserts the district court should have imposed penalties on Commonwealth. Commonwealth cross-appealed, asserting Levy Gardens is not entitled to any coverage under the policy.

## II

We review grants of summary judgment de novo on appeal, applying the same standards as the district court. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999). "[T]he party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact . . . .'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). A dispute is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A fact issue is "material" if its resolution could affect the outcome of the action. *Id.* When reviewing summary judgment decisions, we construe all facts and inferences in the light most favorable to the non-moving party. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). We review bench trial findings of fact for clear error. *Water Craft Management LLC v. Mercury Marine*, 457 F.3d 484, 488 (5th Cir. 2006).

We review interpretations of state law de novo, *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. Of Pittsburgh, Pa.*, 642 F.3d 506, 509 (5th Cir. 2011), "resolving questions of Louisiana law the way the Louisiana Supreme Court would interpret the statute based upon prior precedent, legislation, and relevant commentary." *Commerce & Indus. Inc. Co. v. Grinnell Corp.*, 280 F.3d 566, 570

No. 12–30010

(5th Cir. 2002) (internal quotation marks and citation omitted). Under Louisiana law, we read insurance policies as a whole, construing them strictly in favor of the insured. *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 517–18 (5th Cir. 2005). Where there is ambiguity, we construe insurance policies according to what a reasonable policy purchaser would expect at the time of purchase, and where the policy is clear, we interpret it as written. *Id.*

## III

Commonwealth asserts Levy Gardens's losses are not covered by its title insurance policy primarily because at the date of the policy, October 7, 2008, the land was zoned to allow multi-family housing, and the insurance policy only covers adverse zoning *on the date of the policy*. In support, Commonwealth asserts the adverse 2009 judgment by the state court does not mean the property was not favorably zoned on October 7, 2008, despite the 2009 judgment's application of the 1985 ordinance that was in effect before the date of the policy. Commonwealth concludes zoning was favorable on the date of the policy, October 7, 2008, because the state court judgment came later. The district court disagreed and, citing the reasoning of the state court, held the 1985 ordinance prohibited multi-family housing on the property on October 7, 2008 despite the fact that the 1985 ordinance was overlooked by the City and the parties on that date. The district court's conclusion is correct because the state court judgment applied the 1985 ordinance and the 1995 CZO, in effect long before October 7, 2008.

In addition, Commonwealth makes two state law arguments. First, Commonwealth asserts the 1985 ordinance does not apply to Levy Gardens's property and is superceded by the 1995 CZO, despite the holdings of the state court in the 2009 judgment and the district court in the instant case. Second, Commonwealth asserts the City of New Orleans is the only entity with state statutory authority to make zoning determinations, and therefore the letters

from City employees and the building permits issued by the City prior to October 7, 2008 conclusively establish that the property was zoned favorably on that date.

The principle that state courts are the final arbiters of state law is well-settled. *See, e.g., Bell v. State of Md.*, 378 U.S. 226, 237 (1964) ("It is not for us, however, to decide this question of Maryland law, or to reach a conclusion as to how the Maryland Court of Appeals would decide it. Such a course would be inconsistent with our tradition of deference to state courts on questions of state law."). Commonwealth's state-law contentions have already been addressed by the Louisiana courts. *East New Orleans Neighborhood Advisory Comm'n v. Levy Gardens Partners 2008, LLC*, 20 So.3d 1131 (La. App. Ct. 2009) ("*ENONAC*"), *cert. denied*, 22 So.3d 169 (La. 2009). Commonwealth is mistaken to think the role of this federal court is to make an independent determination of state law where state courts have already decided the matter. The state courts already determined the 1985 ordinance applies to Levy Gardens's property and is not superceded by the 1995 CZO. *Id.* The Louisiana Fourth Circuit Court of Appeal affirmed the state trial court holding, and the Louisiana Supreme Court denied certiorari. *Id.* Although not necessary, the district court found the reasoning of the state courts persuasive and made the same holding independently on summary judgment. The district court reasoned that it was not bound by the state court judgment, presumably because the state court judgment determined a zoning matter, not coverage under the insurance policy. Because the district court also determined the 1985 ordinance prevented multi-family housing on the property, it found Levy Gardens had coverage under the policy. The district court did not need to make an independent holding that the 1985 ordinance applies to Levy Gardens's property, however, because the state courts had already decided on the applicability of that particular state law to that particular property. *Id.* Neither do we need to make an independent holding to the same

effect. *Bell*, 378 U.S. at 237. Though we decide whether Levy Gardens has coverage under the insurance policy, coverage that is affected by the state law zoning determination, as a federal court we should not hold state law provides a favorable zoning determination where state courts have held state law provides an unfavorable zoning determination. *Id.* Rather, we need determine only whether the property was zoned for multi-family housing on the date of the policy, October 7, 2008. As discussed above, the state courts applied the 1985 ordinance and the 1995 CZO, in effect long before the date of the policy; therefore, the property was not zoned for multi-family housing on the date of the policy.

Whether state law requires the *City* to make zoning determinations is likewise a matter for the state courts. *Id.* We do not hold the City's zoning determination is given precedence under state law where the state courts have concluded otherwise. *Id.* Whether we agree with the reasoning of the 2009 judgment is irrelevant: a state appellate court affirmed a trial court decision holding that the 1985 ordinance prevents multi-family housing on Levy Gardens's property. *ENONAC*, 22 So.3d at 1137. The state court did not determine the previous City decisions should be given precedence under state law. *Id.* Commonwealth is mistaken to assert this federal court should make a contrary determination. *See generally Bell*, 378 U.S. at 237.

Next, Commonwealth asserts there is no coverage because the failure of Levy Gardens's project was not caused by the zoning determination. This conclusion is incorrect. The basis for the insured-against loss in the endorsement is the reduction in value of the property's title due to unfavorable zoning. This reduction occurred because of the unfavorable zoning determination. Commonwealth may be correct that not *all* the losses of the project were caused by the zoning determination, but certainly the reduction in the *title's* value due to zoning was caused by the zoning determination. *See* 15

AM. JUR. TRIALS 467 (1968–date) ("Title insurance may be briefly defined as an agreement whereby the insurer, for a valuable consideration, agrees to indemnify the insured in a specified amount against loss of, or defect in, *title* to real estate . . . .") (emphasis added).

Lastly, Commonwealth asserts Levy Gardens is not entitled to coverage because Levy Gardens did not comply with three policy conditions. First, the zoning endorsement requires "a final decree of a court of competent jurisdiction adjudicating the invalidity, the effect of which is to prohibit the use or uses." Commonwealth asserts the issuance of the preliminary injunction by the state courts cannot be a "final decree;" rather, a *permanent* injunction is required to fulfill this condition. This is a plausible assertion. The plain reading of the condition, however, only requires a "final decree," which ordinarily means an appealable as opposed to interlocutory decree. *See, e.g., Gloria S. S. Co. v. Smith*, 376 F.2d 46, 47 (5th Cir. 1967) ("Gloria had the choice of appealing from that order within fifteen days or of awaiting a final decree, for all interlocutory orders are reviewable on appeal from the final decree."); *accord Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000). Construing the policy in favor of the insured, *Coleman*, 418 F.3d at 517–18, we hold the Louisiana Fourth Circuit Court of Appeal decision affirming the trial court judgment and the denial of certiorari by the Louisiana Supreme Court satisfy the "final decree" requirement.

Second, Commonwealth asserts Levy Gardens did not comply with the Section 3 notice requirement of the insurance policy, which reduces liability to the extent of prejudice caused by Levy Gardens's failure to notify Commonwealth of litigation. Unlike the other issues that determine whether Commonwealth owes Levy Gardens any coverage at all, the district court did not decide this issue on summary judgment; rather, it decided this issue after the bench trial. Therefore, unlike the de novo standard we use in reviewing the

other issues in this section, we review the factual findings of the district court in this issue for clear error. *Water Craft Mgmt. LLC*, 457 F.3d at 488.

After the bench trial, the district court found, "Levy Gardens did not comply with the notice requirements set forth in [Section] 3." The district court chose not to reduce Levy Gardens's damages, however, implying any prejudice caused by Levy Gardens's non-compliance was insignificant. The evidence in the record shows the district court did not clearly err in finding the prejudice to Commonwealth did not warrant any reduction in damages. The district court found Commonwealth prejudiced by not being able to choose its own counsel to represent Levy Gardens in the state court litigation, but also found the ability of the counsel who did represent Levy Gardens "considerable." Furthermore, Levy Gardens did notify Commonwealth of the adverse 2009 judgment, but Commonwealth chose not to participate in either the appeal to the Louisiana Fourth Circuit Court of Appeal or the application for a writ of certiorari from the Louisiana Supreme Court. Therefore, the district court's finding that any prejudice to Commonwealth should not reduce Levy Gardens's damages is not clearly erroneous.

Third, Commonwealth asserts the failure of Levy Gardens to complete the conditional use process ordered by the 2009 judgment precludes liability because the zoning endorsement specifically voids liability where there is a "[l]ack of compliance with any conditions, restrictions, or requirements contained in the zoning ordinances and amendments, including but not limited to the failure to secure necessary consents or authorizations as a prerequisite to the use or uses." The conditional use process ordered by the 2009 judgment cannot, however, be what is contemplated by the endorsement's requirement to "secure necessary consents." Otherwise, Commonwealth would be shielded from paying out for insurance coverage every time there is an adverse zoning determination before or as a result of the conditional use process. Levy Gardens did at first "secure

11

No. 12–30010

necessary consents" by obtaining building permits from the City, but the adverse 2009 judgment voided those consents. As the district court found:

> The entire point of [Levy Gardens] purchasing title insurance and paying extra for a zoning endorsement was so it would not have to go through the conditional use process. It was assured and insured that multi-family housing was a permitted use, making the need to undergo the conditional use permit process unnecessary.

We do not disturb this finding because undergoing the conditional use process *does not guarantee* "secur[ing] necessary consents." Following Commonwealth's logic, on one hand Commonwealth would not have to pay insurance proceeds to Levy Gardens had Levy Gardens undergone the conditional use process but nevertheless been denied "necessary consents." The endorsement states Levy Gardens must "secure necessary consents," not only "*try* to secure necessary consents," so undergoing the conditional use process unsuccessfully would not satisfy the requirement. On the other hand, had Levy Gardens successfully undergone the conditional use process and received an exemption from the city council for the property, the property would not have been encumbered by zoning regulations. In other words, under Commonwealth's reading of "secure necessary consents," Commonwealth would never be liable. In any event, the purpose of purchasing title insurance is to avoid such processes that allow for special exemptions from zoning regulations. Therefore, reading the insurance policy in favor of Levy Gardens, we hold the insurance policy does not require Levy Gardens to undergo the conditional use process.

Therefore, we hold the district court did not err in concluding Levy Gardens has coverage under the insurance policy. Furthermore, we hold the district court did not err in concluding Levy Gardens did not violate the conditions of the policy in a manner prejudicial to Commonwealth.

No. 12–30010

**IV**

Turning to damages, Levy Gardens asserts it is entitled to all losses derived from preparing the property for development, not only the reduction in value of the title to the property that resulted from the zoning encumbrance. Commonwealth asserts Section 8 of the policy unambiguously restricts liability to the difference in the value of the title with and without the zoning encumbrance. Levy Gardens counters in three primary ways: 1) Commonwealth waived any use of Section 8 because it did not specifically include that section in its answer to Levy Gardens's complaint; 2) Section 8 is ambiguous and therefore must be construed to include all losses resulting from use of the property, not only loss in the value of the title; and 3) the zoning endorsement is stand-alone coverage that insures use of the property regardless of any other language in the insurance policy. Levy Gardens is mistaken in all three contentions. The title insurance policy insures against only the diminution in value of the property's title.

First, Levy Gardens contends that Commonwealth failed to allege Section 8 as an affirmative defense. Federal Rule of Civil Procedure 8(c) does require a defendant to "affirmatively state any avoidance or affirmative defense." "Louisiana appellate courts have for decades required that exclusions to insurance contracts be specifically pleaded as affirmative defenses." *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 204 (La. 2008). "[A]n affirmative defense raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action." *Id.*

Commonwealth did not, however, waive the contention that Section 8 defines the losses Levy Gardens is entitled to. Levy Gardens relies on *Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co., Inc.*, 418 F. App'x 327, 330 (5th Cir. 2011), for the proposition that "[m]erely pleading the terms and conditions of an insurance policy is not sufficient to raise affirmative defenses

under the policy." Unlike here, *Aunt Sally's* addressed a failure to plead specific policy exclusions. Levy Gardens asserts Section 8 is an affirmative defense, and therefore should be treated as an exclusion. It is mistaken, however, because Section 8 is the only section available for determining the extent of liability—it is not an affirmative defense in the way an exclusion is an affirmative defense. It does not "raise[] a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action." *Sher*, 988 So. 2d at 204. It is not a defense to liability; rather, it is a description of the extent of liability, as defined in the policy, for the loss or damage once liability is found.

Furthermore, "a technical failure to comply precisely with Rule 8(c) is not fatal." *Aunt Sally's*, 418 F. App'x at 330 (citing *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983)). "Rather, it is left up to the discretion of the trial court to determine whether the party against whom the unpleaded affirmative defense has been raised has suffered prejudice or unfair surprise. [*Allied Chemical Corp.*, 695 F. 2d at 855]. Thus, we review the district court's decision . . . for abuse of discretion." *Aunt Sally's*, 418 F. App'x at 330. Even if Section 8 were an "affirmative defense," the district court could not have abused its discretion because, the entire principal policy being only four pages long, Levy Gardens could not have been prejudiced or unfairly surprised. Section 8, the only section describing the extent of liability, could not be hidden away only to be pulled out later in a surprising or prejudicial manner. Therefore, Levy Gardens could not have "suffered prejudice or unfair surprise" when Commonwealth used Section 8 to determine the extent of liability. *Id*.

Second, Levy Gardens asserts Section 8 is ambiguous, so we should construe the section to include all loss or damage arising from the failed housing project. Levy Gardens relies on our opinion in *First American Bank v. First American Transport Title Ins. Co.*, 585 F.3d 833 (5th Cir. 2009), for the proposition that "title insurers take different approaches to the application of

Section 8(a)," concluding the section must be ambiguous. This reliance is misplaced. *First American Bank* held the same language that is used in Levy Gardens's insurance policy limits the insurer's liability to "the difference between the value . . . when unencumbered and the value . . . subject to the [encumbrance]." *First American Bank*, 585 F. 3d at 838. *First American Bank* recognized the difference between those values cannot be determined only by looking at the price resulting from a foreclosure sale. *Id.* That is clearly different from holding the language itself is ambiguous. In *First American Bank*, we remanded for proper valuation, asking the district court to take into account market data other than the foreclosure price; we did not rely on ambiguity to expand coverage beyond anything other than the value of title. *Id.*

Levy Gardens asserts the phrase "loss or damage" in Section 8 is also ambiguous, citing a number of out-of-state cases. It does not, however, present any alternative way to read the phrase "loss or damage." Section 8 is very clear in defining "loss or damage" as the lesser of the amount of insurance or the difference in value between the title with and without the zoning encumbrance. There is no reason to interpret "loss or damage" other than with the clear definition in Section 8. Section 8 is simply unambiguous: the loss or damage is the difference in value; neither the phrase "loss or damage" nor the word "value" is subject to any competing definition.

Third, Levy Gardens asserts the zoning endorsement is stand-alone coverage that should be read without the benefit of Section 8. Levy Gardens asserts that because the endorsement provides coverage in the event certain "use" of the land is prohibited, it must insure the use of the property, not the value. It also cites commentators who describe zoning endorsements as insuring against loss in the event property is "not zoned for a specified use or uses." This logic is misguided because the zoning endorsement insures the value of the title in the event certain use is not allowed (here, multi-family housing), therefore the

word "use" is a necessary term in describing the coverage it provides. That does not transform it into stand-alone coverage insuring against any loss related to any use of the property apart from the value of the property's title.

In addition, Levy Gardens asserts the zoning endorsement is stand-alone coverage because it modifies and conflicts with the policy. The endorsement does modify, or conflict with, the policy: it simply excepts the policy's exclusion for zoning, but no more. Levy Gardens relies on *Bozeman v. Commonwealth Land Title Ins. Co.*, 470 So. 2d 465 (La. App. Ct. 1985), for the proposition that an insurer cannot use an endorsement to insure for a known risk and then rely on a contrary exclusion to avoid liability. Commonwealth, however, is not relying on any zoning exclusion in the policy. *Bozeman* does not transform zoning endorsements into stand-alone coverage; it only prevents insurers from using exclusions to disregard endorsements they issue. 470 So. 2d at 467 ("[A]n exclusion may not be used to defeat coverage where the insurer was informed of the defect in the title and agreed to insure against loss occasioned by such defect."). Therefore, Levy Gardens cannot show the zoning endorsement is stand-alone coverage based on the fact that the endorsement modifies or conflicts with the policy's zoning exclusion.

Lastly, Levy Gardens asserts the zoning endorsement is stand-alone coverage because enforcing the terms of Section 8 would subvert the coverage provided by the endorsement. This reasoning simply assumes the answer. Section 8 would limit the coverage provided by the endorsement if the endorsement were stand-alone coverage, but this does not mean the endorsement is in fact stand-alone coverage. When the insurance policy is read as a whole, it is clear that Section 8 describes the extent of liability and the zoning endorsement excepts the zoning exclusion in the principal policy in order to cover loss to the value of the title in the event of a zoning encumbrance. It does not, contrary to Levy Gardens's assertions, transform this title insurance

No. 12–30010

policy into one that covers all losses, whether or not they are related to the value of the title. Therefore, we hold the district court did not err in concluding the insurance policy provides coverage for only the diminution in value of title to the property resulting from the zoning encumbrance.

## V

Levy Gardens asserts the district court committed manifest error by declining to impose penalties on Commonwealth. Louisiana law provides for penalties in LA. REV. STAT. 22:1892 and 22:1973. Section 22:1892 reads in relevant part:

> A. (1) All insurers . . . shall pay the amount on any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. . . .
> . . .
> (4) All insurers shall make a written offer to settle any property damage claim . . . within thirty days after receipt of satisfactory proofs of loss of that claim.
> B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim . . . , when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty
> . . . .

LA. REV. STAT. 22:1892(A)(1), (A)(2), (B)(1). 22:1973 reads in relevant part:

> A. An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
> . . .
> C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed

17

> duty, the claimant may be awarded penalties assessed
> against the insurer . . . .

LA. REV. STAT. 22:1973(A), (C).

"A cause of action for penalties . . . requires a showing that (1) an insurer has received satisfactory proof of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1112–13 (La. 2008). "The phrase 'arbitrary, capricious, or without probable cause' . . . describe[s] an insurer whose willful refusal of a claim is not based on a good-faith defense." *Id.* at 1114. Under Louisiana law, "penalties should be imposed only when the facts negate probable cause for nonpayment," not "when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Id.* (quotation marks and citation omitted). "[W]hen there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause." *Id.* On the other hand, "an insurer cannot stonewall an insured simply because the insured is unable to prove the exact extent of his damages. Where the exact extent of the damages is unclear, an insurer must tender the reasonable amount which is due." *Id.* at 1115 (quotation marks and citation omitted). In *Louisiana Bag*, the Louisiana Supreme Court found the trial court committed manifest error when it did not impose penalties where the insurer did not dispute that it received proof of loss and delayed making payment on the undisputed portion of the claim to the insured. *Id.* at 1114–15, 1122.

"Whether or not a refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action . . . . Because the question is essentially a factual issue, the trial court's

No. 12–30010

finding should not be disturbed on appeal absent manifest error." *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003).

Levy Gardens asserts the district court manifestly erred in declining to impose penalties on Commonwealth because Commonwealth "stonewalled" Levy Gardens. Commonwealth responds that its position, asserting Levy Gardens did not have any coverage, was taken in good faith, even if ultimately wrong. The district court made five findings related to penalties: (1) Levy Gardens hampered negotiations by refusing to entertain questions about coverage and not reading the policy; (2) Levy Gardens did not provide Commonwealth sufficient proof of loss or notice of the claim because it used the incorrect policy number; (3) Commonwealth should have been clearer in its communications to Levy Gardens about its position; (4) Commonwealth's position on coverage was taken in good faith; and (5) Commonwealth's actions were not "so" arbitrary and capricious as to warrant penalties.

Levy Gardens places much emphasis on the word "so," asserting that any arbitrary and capricious action by Commonwealth would mandate the imposition of penalties. This disregards the discretion of the trial court to determine whether conduct by Commonwealth is "arbitrary and capricious" under the statute. The use of the word "so" by the trial court—in an oral ruling, no less—cannot be given so much weight as to hold the district court committed manifest error by declining to impose penalties. Rather, the district court simply did not find Commonwealth's conduct arbitrary and capricious under the penalty statutes. *See Guillory v. Lee*, 16 So.3d 1104, 1127 (La. 2009) ("[T]he question of arbitrary and capricious behavior [under the penalty statutes] is essentially a factual issue, and the trial court's finding should not be disturbed on appeal absent manifest error."). The record is replete with evidence supporting both positions. Levy Gardens used the incorrect policy number and did not provide proof of loss or notice, and Commonwealth was not clear in its communications

19

with Levy Gardens.   Neither party acted perfectly, but Commonwealth did assert in good faith that there was no coverage at all, so it should not be penalized for not paying anything because there was no undisputed amount of damages.  *Louisiana Bag*, 999 So. 2d at 1114-15.  The district court's findings that Commonwealth's actions were not arbitrary and capricious and Commonwealth made its assertions in good faith are reasonable and supported by the record.  Therefore, we hold the district court did not manifestly err by declining to impose penalties on Commonwealth.

## VI

For these reasons, we AFFIRM.