# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2014

Lyle W. Cayce
Clerk

No. 12-40913

CARL THERON TERRY, Individually and as Representative of the Estate of Nenita Casela Terry, Deceased,

Plaintiff,

v.

BP AMOCO CHEMICAL COMPANY, ET AL,

Defendants.

_____

STEVEN ANDREWS,

Plaintiff–Appellant,

v.

BP PRODUCTS NORTH AMERICA, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:07-CV-389

Before OWEN and HAYNES, Circuit Judges, and LEMELLE,[*] District Judge.

_____

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 12-40913

PER CURIAM:[**]

Steven Andrews seeks review of the district court's grant of summary judgment in favor of BP Products North America, Inc. (BP). Andrews asserted negligence and premise liability claims arising out of injuries sustained when he fell and then was stepped upon in a parking lot while running immediately after an explosion at BP's Texas City refinery (the Refinery). We affirm.

## I

Andrews was employed by a contractor, Zachary Construction, as a carpenter's helper. Zachary Construction was engaged by BP to perform tasks at the Refinery on a work-order basis relating to "maintenance assets" including tools, equipment, and vehicles. Andrews had worked at the Refinery the day of the explosion. After the end of his shift, he and his cousin had just passed through a turnstile, exiting onto a BP parking lot. They stopped to talk to one of his cousin's former coworkers. It was then that a portion of the Refinery's Resid Hydrotreater Unit (RHU) exploded.

When the RHU exploded, Andrews and his cousin reported hearing a loud noise and seeing a cloud of black smoke form over the plant. A security guard ran toward them from the security guard "shack" shouting that "the plant just blew up. Y'all get out of here." As Andrews turned to evacuate, he tripped and fell, and an unidentified person collided with him and stepped on his back. Andrews was helped to his feet by his cousin, and the two fled across the street. Andrews alleges that his back was injured in the incident, preventing him from working, requiring significant medical treatment, and causing him anxiety and depression.

---

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 12-40913

Andrews and BP appear to agree that the explosion was caused, at least in part, by a faulty component improperly installed in the RHU by another contractor, JV Industrial Companies, Ltd. (JV Industrial). JV Industrial purportedly replaced an alloy steel elbow in a high-pressure, high-temperature hydrogen line with a carbon steel elbow five months before the explosion. The carbon steel elbow ruptured after three months of use. Hydrogen gas escaped and ignited, and a fireball erupted in the unit.

Andrews and other plaintiffs subsequently filed suit against BP in Texas state court seeking damages for various personal injuries and property damage arising from the explosion. The plaintiffs collectively asserted claims of negligence (including premises liability), gross negligence, and intentional infliction of emotional distress. BP removed the suit to the District Court for the Southern District of Texas where it was consolidated with other suits related to the explosion. Over time, the majority of claims were settled or dismissed, but Andrews's claims persisted without significant activity for almost five years.

In response to an order from the district court requiring Andrews to "specify the precise legal theory for his claim," Andrews filed a Supplemental Complaint. Andrews again asserted that his injuries occurred as a result of the explosion and ensuing evacuation from the Refinery, and he enumerated fifteen separate allegations of negligent conduct by BP including failure to properly design, maintain, and oversee the RHU, and failure to prepare for and execute a safe evacuation. The district court subsequently ordered Andrews to produce certain medical and employment records and to "[i]dentify (a) the person who stepped on his back and (b) the specific defect that caused him to fall." In response, Andrews stated that he could not identify the person who stepped on him or any defect in the parking lot. He argued that his allegations did not encompass or rely on any defect in the parking lot, and he reasserted that he "tripped as he turned to run from the explosion." Andrews's theory of the case

was that the defect in the RHU caused an explosion and evacuation that was the proximate cause of his injuries, or at the very least a concurrent proximate cause.

BP moved for summary judgment, arguing that Andrews's claims were barred as a matter of law by Chapter 95 of the Texas Civil Practice and Remedies Code, which pertains to the liability of property owners for the acts of independent contractors. The district court denied that motion but invited BP to move for summary judgment on the alternate ground that Andrews had failed to identify "the specific defect in the walk or person who stepped on him." BP filed a second motion for summary judgment, which the court granted. Andrews appealed.

## II

We review a grant of summary judgment de novo, applying the same standard as the district court.[1] Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] We review the evidence in the light most favorable to the nonmovant including all reasonable inferences.[3] An issue is "material" if it would affect the outcome of the case and is "genuine" if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party.[4] "When a defendant moves for summary judgment and identifies a lack of evidence to support the plaintiff's claim on an issue for which the plaintiff would bear the burden of proof at trial, then the defendant is entitled to summary judgment

---

[1] *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010).

[2] FED. R. CIV. P. 56(a).

[3] *Trinity Universal Ins. Co.*, 592 F.3d at 691.

[4] *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013).

No. 12-40913

unless the plaintiff is able to produce 'summary judgment evidence sufficient to sustain a finding in plaintiff's favor on that issue.'"[5]  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[6]

### III

BP's second motion for summary judgment, which the district court granted, is not a model of clarity.  At the outset, the motion states that it "seeks dismissal of all of Andrews' claims based on his inability to identify (1) the person he alleges stepped on his back and (2) the specific defect that he alleges caused him to fall.  Without such evidence, Andrews cannot establish the essential elements of his claims against BP Products."  This indicates that the focus of the motion is on the condition of the parking lot and Andrews's fall.  However, the motion subsequently asserted the grounds for summary judgment more broadly.  The motion set forth the elements of a negligence claim, arguing that there was no evidence that BP "did something or failed to do something a reasonably prudent person would have done under the same or similar circumstances which proximately caused Andrews' injuries."  The motion also set forth the elements of a premises liability claim, arguing that there was no evidence to support four of the six elements identified.

Andrews did not view BP's motion as limited to the condition of, or events transpiring in, BP's parking lot.  In the first paragraph of his response to BP's second motion for summary judgment, Andrews disagreed with the district court's attempt to direct the focus of the litigation to the parking lot, stating that in response to a court order, he had filed a supplemental complaint "and

---

[5] *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 68 (5th Cir. 2014) (citation omitted).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

identified the failures responsible for the plant explosion as the negligent activity, and the improper placement of piping as the premises defect in question in this case." Andrews's response to BP's second motion for summary judgment also stated on the first page that "Plaintiff's pleadings have never asserted that the person or thing that he fell over was a premises defect. Plaintiff has never asserted that the person who instructed the evacuees was negligent."

In the argument section of Andrews's response, he made clear that the only basis for his claims was BP's responsibility for the explosion at its plant:

> This case concerns an explosion. Plaintiff's theory of the case is that the fall and injury were proximately caused by the explosion on July 28, 2005 and the chaos that ensued. Plaintiff has never claimed this case is about the person that stepped on Plaintiff's back. Plaintiff has never claimed this is a premise liability case asserting a defect in the parking lot where Plaintiff fell. This is a case about the explosion, the omissions of the Defendant responsible for the explosion, and the defect in the piping, and how that negligence was the proximate cause of Plaintiff's fall during the evacuation. Plaintiff has outlined the evidence on each claim and further briefed the issue of proximate cause and concurring cause.

Andrews's response then details his arguments as to why BP should be found liable for negligence and why Andrews should prevail on a premises liability claim. The factual assertions in Andrews's response underpinning both theories of liability are essentially the same. Based on the second, although sketchy, motion for summary judgment and Andrews's fulsome response to that motion, it is fair to say that issue was joined on whether there was evidence that BP was responsible for the explosion.

BP asserted in its motion for summary judgment that there was no evidence raising a triable issue of fact on the elements of either the negligence or premises liability claim. Andrews's response to that motion is replete with allegations of acts or omissions and conclusory assertions of negligence. It is, however, lacking in any admissible evidence to support those allegations and

assertions. With respect to the negligence claim, the response to the summary judgment motion asserts:

> In this case, Defendant was a handler of a dangerous commodity, specifically hydrogen. Exhibit B. Defendant's facility was the site of an explosion and fire after "a piping elbow catastrophically" failed. Exhibit C. Defendant failed to properly handle the dangerous commodity, by failing to ensure the system was properly reconstructed. Exhibit C and D. The piping exploded at the flange due to a High Temperature Hydrogen Attack (HTHA). Exhibit D at 1. Incidents involving HTHA have occurred since the 1940's. Exhibit D at 4. The topic of HTHA has been the subject of writings since at least 1985. Exhibit D at 8. In fact, the American Petroleum institute issued a recommended practice, concerning "Steels for Hydrogen Service at Elevated Temperatures and Pressures in Petroleum Refineries and Petrochemical Plants" in March of 2004, a year before the contractor performed reconstruction of the unit piping. Exhibit D at 8. Defendant failed to inspect the system and make sure the contract properly reconstructed the system after maintenance. Exhibit D at 6. Defendant failed to design the system so that incompatible parts could not be interchanged during reconstruction. Exhibit D at 6. Defendant failed to require positive material identification during maintenance to prevent improper reconstruction. Exhibit C and D at 6. Defendant failed to alert the maintenance contractor that the two pieces of the pipe could not be interchanged. Exhibit C and D at 7. Defendant "should have required positive materials verification of these pipe elbows." Exhibit C. If Defendant had done so, the accident would not have occurred. Exhibit C. It is a breach of the high degree of care required of Defendant to fail to ensure proper reconstruction of the unit piping.

The response to the motion for summary judgment regarding the issue of premises liability is virtually identical.

Exhibits C and D are the only evidence that Andrews identified as raising a material issue of fact as to BP's responsibility for the explosion. Those exhibits are a Safety Bulletin issued by the United States Chemical Safety and Hazard Investigation Board (CSB) and a CSB press release discussing the bulletin. The statute creating the CSB, however, prohibits Andrews from using those

No. 12-40913

documents as evidence in this case.[7]  Additionally, both CSB documents also likely constitute inadmissible hearsay under the Federal Rules of Evidence.[8] Because Andrews did not identify any admissible evidence that BP breached a legal duty of care owed to Andrews, BP was entitled to summary judgment.

\*    \*    \*

The judgment of the district court is AFFIRMED.

---

[7] *See* 42 U.S.C. § 7412(r)(6)(G) ("No part of the conclusions, findings, or recommendations of the Board relating to any accidental release or the investigation thereof shall be admitted as evidence or used in any action or suit for damages arising out of any matter mentioned in such report.").

[8] *See* FED. R. EVID. 801-02.