759 So.2d 268 (2000)
GULF COAST BANK & TRUST COMPANY
v.
DONNAUD'S INC., Donald J. and Marian T. Donnaud.
No. 99-CA-1228.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2000.
Rehearing Denied May 22, 2000.
*270 Wayne M. Babovich, Bradley J. Chauvin, Tilton R. Hunter, Jr., Metairie, Louisiana, Attorney for Defendant/Appellant.
Robert A. Mathis, Metairie, Louisiana, Attorney for Plaintiff/Appellee.
Panel composed of Judges CHARLES GRISBAUM, Jr., SOL GOTHARD and THOMAS F. DALEY.
DALEY, Judge.
This is an appeal by the defendants from a judgment granting the plaintiffs Motion for Summary Judgment. For reasons assigned, we affirm in part, amend in part, reverse in part, and remand this matter to the trial court for further proceedings.

FACTS:
This appeal involves three promissory notes. The first note in the amount of $362,500.00, made payable to Orleans Bank and Trust Company, dated May 29, 1986, is signed by Donnaud's Inc., Donald Donnaud, individually, and Marion T. Donnaud, individually. The second note in the amount of $150,000.00, made payable to Orleans Bank and Trust Company, dated May 29, 1986, is signed by Donnaud's Inc., Donald Donnaud, individually, and Marion T. Donnaud, individually. The third note in the amount of $18,000.00, made payable to Orleans Bank and Trust, dated October 1, 1987, was executed by Donnaud's Inc., and endorsed by Donald Donnaud.
Orleans Bank and Trust was closed and the Federal Deposit Insurance Corporation (FDIC) was confirmed as receiver on January 12, 1989. On May 15, 1991, these notes were assigned to the FDIC. On August 23, 1991, the FDIC filed suit against the defendants to collect on these notes. On September 16th and 17th, 1996, these same notes were assigned by the FDIC to the plaintiff in this suit, Gulf Coast Bank and Trust Co. (Gulf Coast). Gulf Coast was substituted as plaintiff on September 19, 1996. Summary Judgment was granted in favor of Gulf Coast. It is from this judgment that defendants have appealed.

DISCUSSION:
It is well settled that a Motion for Summary Judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Under the recently-amended version of article 966, summary judgment is now favored; however, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, the nonmoving party then must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Berzas v. OXY USA, Inc., 29,835 (La.App. 2nd Cir. 9/24/97), 699 So.2d 1149.
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
On appeal, the defendants list several Assignments of Error. First, the defendants assert the trial court erred in failing to find that the promissory notes have prescribed. We find that the trial court correctly determined the promissory notes have not prescribed. All three of the notes are secured by the pledge of a collateral mortgage note and a collateral *271 chattel mortgage note. The long-standing rule of law is that prescription does not run in favor of a debtor whose debt is secured by a pledge, and prescription remains interrupted as long as the thing pledged remains in possession of the pledgee. Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956).
The defendants further argue the collateral mortgage note has prescribed. We disagree. LSA-R.S. 9:5807 provides that payment on the promissory note interrupts prescription of the collateral mortgage note pledged to secure the promissory notes. Both parties agree that payments were made on the first and second notes at least until December 27, 1988, and payments were made on the third note at least until January 9, 1989. Prescription did not begin to run on the notes until these dates. Suit was filed by the FDIC on August 27, 1991, well within the five-year prescriptive period. Thus, defendants' arguments regarding prescription are without merit.
Next the defendants argue the plaintiff is not in a position to collect on two of the three notes in question. Defendants contend the assignments from Orleans Bank and Trust to the FDIC only transferred one of the notes. This argument revolves around the act of assignment to the FDIC, which assigned the following: (1) a promissory note dated October 1, 1987 in the amount of $362,500.00, (2) a promissory note dated May 29, 1986 in the amount of $150,000.00, and (3) a promissory note dated May 29, 1986 in the amount of $18,000.00. Copies of the actual notes were filed into the record, which makes it clear that the dates for the first and third notes were transposed in the act of assignment. That is, the assignment should have assigned a note dated May 29, 1987 in the amount of $362,500.00 and a note dated October 1, 1987 in the amount of $18,000.00. The notes were then assigned from the FDIC to plaintiff. The dates and amounts on the second assignment were correct. The defendants argue that the notes are made "pay to the order of Orleans Bank and Trust," and as such, in order for the plaintiff to assert a valid claim on the notes, there must be a valid assignment.
It is clear that the terms, interest rate, debtors, and amount of the notes in the assignment from Orleans Bank and Trust to the FDIC are correct and that the dates on the notes were merely transposed in the act of assignment. The record indicates that the notes were delivered to the FDIC when they were assigned. The record further indicates that when the notarial act of assignment of the notes from the FDIC to Gulf Coast was executed, the original notes were delivered to Gulf Coast, and the notes were endorsed "Pay to the Order of Gulf Coast Bank & Trust Co." In the affidavit of Mr. Bruce Falkenstein, submitted by plaintiff, Mr. Falkenstein explains that these notes were assigned to the FDIC, and then to the plaintiff by notarial acts of assignments.
In First National Bank v. Carr, 572 So.2d 1106 (La.App. 1st Cir.1990), First National Bank, filed suit to collect on unpaid promissory notes. During the pendency of the suit, Hibernia National Bank acquired all assets of the original holder of the note, First National Bank. On appeal, the defendant argued Hibernia was not the proper party plaintiff. The First Circuit found Hibernia was the proper party plaintiff and had established its position as a holder by producing the original notes. Citing R.S. 10:3-301, the Court further held Hibernia had the right to enforce payment of the obligation as a holder of the instrument.
In the instant case, Gulf Coast has produced the original notes. Thus, even if we do not consider the affidavits, the acts of assignment, or the endorsements, Gulf Coast is the holder of the notes and as such can enforce payment of the notes.
The defendants further claim the trial court erred in granting the plaintiff's Motion for Summary Judgment when there *272 are genuine issues of fact as to the amount due on each note, the rate and calculation of interest, the allocation of payments among the notes, and the plaintiffs right to attorneys' fees.
The trial court found note number one has an unpaid principal balance of $311,785.50, with an interest rate of 1% over Orleans Bank's prime, note number two has an unpaid balance of $149,000.00, with an interest rate of 2% over Orleans Bank's prime, and note number three has an unpaid balance of $10,769.83, with an interest rate of 2% over Orleans Bank's prime. In reaching a determination of the principal amounts due on the notes, the trial court relied on the loan statements filed by plaintiff and attested to by Mr. Falkenstein and Mr. Alvarez. The amounts the court determined are due are the amounts shown on the loan statements.
Mr. Donnaud alleges that certain payments allocated to the indebtedness of $311,785.50 should have been allocated to the indebtedness of $149,900.00. In other word, he claims credits were applied to note number one that should have been applied to note number two. In support of this argument, Mr. Donnaud submitted an affidavit by Mr. Matthew Hurst, an accountant, who attested that he reviewed the loan statements and recalculated the loan payments allocating all payments to note number two. Mr. Hurst's calculations indicate that if all payments had been applied to loan number two, that loan would not have an outstanding balance. The trial court correctly determined that these affidavits alone without any supporting documentation were insufficient to prove that all payments should have been credited to note number two.
Mr. Donnaud also argues there is a dispute as to whether payments were made while the notes were being held by the FDIC. In his affidavit, Mr. Donnaud alleges payments were made on the notes by money orders to the FDIC. The affidavit is silent as to amounts and dates of payments, nor were any documents such as money order receipts or canceled checks submitted to support this allegation. This general allegation in the affidavit, which is unaccompanied by supporting documentation, is insufficient to carry the defendants' burden of proving they were not properly credited for payments made while the FDIC was in possession of the notes.
Once the holder of a promissory note produces the note, he is entitled to the face amount on the note. Payment is an affirmative defense to a suit on a promissory note, and the burden is on the defendant to prove payment. American Bank v. Saxena, 553 So.2d 836 (La.1989).
Mr. Donnaud further attests the loans were not credited with a payment made as a result of the liquidation of a life insurance policy which was collateral for these notes. In support of this position, the defendant submits a letter from the FDIC requesting he sign a surrender agreement and return the surrender agreement to the FDIC. The surrender agreement would then be forwarded to the life insurance company which will forward a check made payable to Mr. Donnaud and the FDIC. The letter requests Mr. Donnaud sign this check upon receipt, and forward it to the FDIC. A copy of the unsigned surrender agreement is attached to the letter. Both Mr. Donnaud's affidavit and the letter are silent as to the amount of the life insurance proceeds, or the date the check was forwarded. Mr. Donnaud does not attest that he signed the surrender agreement or the check. There is no further evidence to support defendants' claim, such as a copy of the check or correspondence from the insurance company that accompanied the check. The letter from the FDIC and the unsigned surrender agreement are insufficient to carry the defendants' burden of proving the life insurance policy was liquidated and the proceeds paid toward the outstanding balance of the loan.
*273 Mr. Donnaud has not produced one scintilla of evidence to support his contention that all payments on note number one were supposed to be applied to note number two. Nor was there any evidence to support his contention that payments were made to the FDIC while the FDIC held the notes. There is no evidence in the record that Mr. Donnaud actually received the check for liquidation of the life insurance policy or that he returned it as requested. The trial court held it was "unable to credit the defendant for this alleged payment due to a lack of sufficient evidence to support defendant's allegation." We find the trial court was correct in determining these portions of Mr. Donnaud's affidavit were insufficient to carry the defendants' burden of proving these payments on the notes.
Mr. Donnaud further attests that he was not given credit for all payments. This attestation is supported by copies of three checks payable to Orleans Bank and Trust. The first of these checks is check number 116, in the amount of $5,405.00. The memo on this check states "for cashier's check." The check is stamped with the notation "cashier's check number 4889". The trial court held this check does not establish payment, it only proves defendant purchased a cashier's check on the date of this check. The second check, in the amount of $4,563.63, was drawn on the payroll account of Donnaud's Inc. In finding this check did not prove payment on the loan, the trial court stated:
Payroll accounts are generally used to pay employees and payroll taxes. Payroll taxes are paid by drafting the bank that maintains the payroll account, and the bank then pays the Federal government. The notation "TT & L" on the reverse side of the check at issue which indicates the bank's "treasure, tax, and loan account" leads this court to believe that this check was in fact not a payment towards the balance of the loans. Another relevant fact is that the "for" section in the bottom left-hand corner of the check has been obliterated, thus denying this court any access to the notation that may have been inscribed, which would have clarified the purpose for which it was written.
The defendant attests there was a third check in the amount of $8,750.00 dated May 29, 1986 for which he did not receive credit on payment of his notes. Relying on the notation on the check, which reads "2 pts term/1 pt line," as well as the fact that the amount of the check totaled 2% of $362,500.00 plus 1% of $150,000, and the date of the check, the trial court held this check was actually payment for the origination fees on these loans. The trial court's determination that these checks were not intended as payments on the notes required an evaluation of the conflicting inferences and a factual determination. The trial court clearly found Mr. Donnaud's attestation that these checks were intended as payments on the note to be not credible. However, a court may not make credibility determinations in ruling on a Motion for Summary Judgment. Mr. Donnaud's affidavit coupled with the checks payable to the bank create a question of fact regarding whether or not he was entitled to credit for these payments. Accordingly, the principle amount due as determined by the trial court is decreased by $18,718.63, the total amount of these checks. The trial court ruling regarding the purpose of these payments can only be made after a trial on the merits.
The defendant also argues the trial court erred in its determination of the interest due on the outstanding amounts of the loans. The affidavit submitted by Mr. Hurst states that the interest rates urged by the plaintiffs affiant, Nancy Hudnall, were not used by Orleans Bank in calculating the interest due. The defendant further argues that because the interest rate on the notes was tied to the Orleans Bank and Trust prime, this prime could not be calculated after the closure of Orleans Bank and Trust. In granting the plaintiff's Motion for Summary Judgment, *274 the trial court relied on the affidavit of Ms. Hudnall in calculating interest due. The trial court found the dispute over the interest rates would not justify a trial on the merits since the defendants benefit from the lower interest rates. We disagree. The interest rates on the notes are tied directly to the Orleans Bank and Trust prime rate. The defendants never argued that the interest rate should have been fixed at the Orleans Bank and Trust prime at the time the bank closed. Rather, the defendants argue the affidavit of Ms. Hudnall does not explain how the interest rates she derived were calculated, and question how the interest rate was calculated after the prime for Orleans Bank and Trust no longer existed. The calculation of interest rates is directly related to the total amount of interest due on the notes, therefore the interest rates are a material issue of fact.
Finally, the defendants argue the trial court erred in awarding attorneys' fees in the amount of $118,113.84. In its Reasons for Judgment, the trial court stated this award was based on the clause contained in the promissory notes which provided for 25% attorney's fees. The defendants argue the attorney's fees awarded are excessive and they are entitled to a hearing on the issue of the reasonableness of attorneys' fees. We agree.
It is well-settled in our jurisprudence that the prohibition against an attorney accepting an excessive fee cannot be abrogated by a clause in a note fixing the amount of attorneys' fees as a percentage of the amount to be collected. Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987). There is no indication in the record that the trial court made an inquiry into the reasonableness of the attorney's fee provided for in the note, nor does the record contain any evidence supporting the reasonableness of this fee. For this reason, the award of attorneys' fees is reversed and this matter is remanded for an evidentiary hearing on the reasonableness of the attorney's fees.
For the foregoing reasons, the summary judgment granted in favor of Gulf Coast is affirmed as to the issue of prescription. The trial court's finding that the plaintiff has the right to collect on the notes is also affirmed. The trial court is instructed to enter an amended judgment which:
(1) Reduces the principal balance due to the plaintiff on note number two by $18,718.63, pending a trial on the alleged payments evidenced by the three checks which were made payable to Orleans Bank and Trust;
(2) Omits any interest awarded after January 12, 1989, pending trial on the merits to establish the appropriate interest rate applicable after Orleans Bank and Trust ceased doing business; and
(3) Eliminating the award of attorneys fees pending a full hearing on the attorney fee award.
The trial court judgment is affirmed in all other respects.
AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART; MATTER REMANDED.