# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 11-30846

LSREF2 BARON, L.L.C.,

Plaintiff-Appellee

v.

KYLE D. TAUCH,

Defendant-Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

May 7, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, OWEN, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Kyle D. Tauch executed a Limited Guaranty Agreement with former party Regions Bank as security for a Loan Agreement between Regions Bank and First KT Lending, L.L.C. First KT defaulted on the loan, and Regions sued Tauch for the total amount due under the Guaranty. In his answer, Tauch made general denials but raised no affirmative defenses. Regions filed a motion for summary judgment; in response, Tauch claimed that First KT had made payments that reduced the amount Tauch owed. The district court granted the motion for summary judgment, finding that the payment claim was an affirmative defense that Tauch failed to plead in his answer and thus waived. Tauch appeals from the grant of summary judgment. For the reasons that follow, we AFFIRM.

No. 11-30846

I.

This case arises out of a Loan Agreement and Term Note between former Plaintiff-Appellee Regions Bank ("Regions") and First KT Lending, L.L.C. ("First KT") and a Limited Guaranty Agreement ("Guaranty") executed by Defendant-Appellant Kyle D. Tauch ("Tauch") as security for the loan. LSREF2 Baron, L.L.C. ("Baron") has since acquired all of Regions's rights against Tauch and is now Plaintiff-Appellee. In December 2007, Regions made a loan to First KT to finance the purchase of promissory notes issued to Regions by two entities that owned an apartment complex ("the property"). The Loan Agreement defines the "Lender" as Regions and the "Borrower" as First KT. To secure First KT's purchase of this debt, Tauch executed the Guaranty, wherein he guaranteed the full payment of 25% of the sum of the outstanding principal balance, accrued and unpaid interest, and late charges upon default by First KT. The Guaranty provides for a reduction of the maximum amount that Tauch owes in the event of certain types of payments on the property–such as capital investments, taxes, and insurance–by Tauch or a "Related Party."[1] The

---

[1] The first paragraph of Section 1 of the Guaranty provides, in relevant part:
The Guarantor hereby unconditionally and irrevocably guarantees to the Lender with respect to the Term Loan, the full and punctual payment of twenty-five (25%) percent of the sum of (a) the outstanding principal balance of the Term Loan, plus (b) accrued and unpaid interest thereon and late charges, each as of the date of the occurrence of an Event of Default that results in the acceleration of the Term Loan (the "Maximum Amount").

The third paragraph of Section 1 of the Guaranty provides, in relevant part:
Payments made by the Borrower or by one or more of the other Obligors from time to time shall not affect, impair, or reduce the liability of a Guarantor to the Lender under this Agreement for the Maximum Amount guaranteed by the Guarantor (except to the extent that the Indebtedness has been reduced pro tanto by the amount of such payments, and except as otherwise specifically provided for herein); however, the Guarantor shall be entitled to a dollar-for-dollar credit against the Guarantor's Maximum Amount...for (a) all sums paid by the Guarantor (or any Related Party) with respect to the DIP Loan (as defined in the Loan Agreement), (b) all sums paid by the Guarantor (or any Related Party) with respect to taxes and insurance premiums unpaid by any Obligor, (c) any principal reduction to the Loans made by a repayment from any Claims Proceeds, and (d) any capital investments made by the Guarantor or a Related Party (or any entity which the Guarantor or the Related Party

2

No. 11-30846

Guaranty defines Related Party, by reference to the Loan Agreement, as "any Person other than an individual in which Kyle D. Tauch individually owns and/or controls 51% of the ownership thereof, or any non-profit entity created directly or indirectly by Kyle D. Tauch."

In June and July 2010, First KT defaulted on the loan, and Regions sent First KT and Tauch a notice of default. Chiron Equities, L.L.C. (an entity allegedly owned in part by Tauch) attempted to make partial payment by check, but the check was dishonored for insufficient funds. In October 2010, Regions filed its complaint against Tauch to enforce the Guaranty. Regions attached copies of the Term Note, the Loan Agreement, and the Guaranty Agreement to the complaint. Tauch filed an answer in which he made general denials but did not raise any affirmative defenses. At the end of the answer he stated: "Defendant further reserves the right to supplement and amend this answer upon further investigation."

The case was assigned to Judge McNamara, who issued an order setting specific deadlines for the case, including a deadline of February 12, 2011 for amended pleadings. In April 2011, Regions filed a motion for summary judgment on the ground that it was entitled to judgment as a matter of law on the full amount of the Guaranty: 25% of the sum of the outstanding principal, interest, and late charges–a total asserted to be $2,205,109.93–plus collection costs, attorney's fees, and related third-party expenses. Regions argued that the terms of the Guaranty were clear and unambiguous and that Tauch had raised no defenses in his answer. Tauch opposed summary judgment on multiple grounds, including that there was a genuine issue of material fact as to the amount due under the Guaranty. Tauch further argued that First KT

---

controls) with respect to the Property, which such capital investments are approved by the Lender, and which such approval shall not be unreasonably withheld.

3

made capital investments with respect to the property that "offset" the amount due by entitling Tauch to "a dollar-for-dollar reduction" of, or "dollar-for-dollar credit against," the amount due under the Guaranty. Specifically, he alleged that representatives of Tauch and First KT met with a Senior Vice President of Regions to obtain approval to make capital investments in the property using a portion of a property-insurance settlement. Tauch further alleged that although First KT could have used the settlement proceeds to pay down the principal, which also would have reduced the amount due under the Guaranty, First KT and Regions agreed that the capital investments were in the best interest of the parties. Thus, First KT spent $1,355,648 in capital investments. Tauch also alleged that an additional $769,500 was provided to the property for payment of insurance premiums.

In reply, Regions argued that Tauch waived his defenses by failing to raise them in his answer and that Regions relied on the answer when moving for summary judgment and thus would be prejudiced if the court allowed Tauch to raise the defenses belatedly. The district court granted Regions's summary-judgment motion, finding that "set-off/recoupment and termination/extinguishment" are affirmative defenses under Louisiana law that must be pleaded in the defendant's answer and that Regions was "unquestionably prejudiced in its ability to respond." The court entered judgment against Tauch in the full amount Regions requested plus reasonable attorney's fees, costs, and expenses.

After Judge McNamara's retirement, the case was reassigned to Judge Fallon. Regions moved to amend the judgment to add an award of pre- and post-judgment interest. Tauch moved to alter or amend the judgment, arguing that the original district judge improperly granted Regions's motion for summary judgment. Judge Fallon granted Regions's motion and denied

No. 11-30846

Tauch's motion. In denying Tauch's motion, Judge Fallon reviewed the law and found no manifest error in Judge McNamara's decision.

Tauch timely filed a notice of appeal from the orders of both district judges. Regions then filed a motion to substitute Baron as Plaintiff because Regions had assigned its rights and claims to Baron,[2] which the district court granted.[3]

## II.

Federal Rule of Civil Procedure 8(c)(1) states: "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. (8)(c)(1). Failure to timely plead an affirmative defense may result in waiver and the exclusion of the defense from the case. *Morris v. Homco Int'l, Inc.*, 853 F.2d 337, 342-43 (5th Cir. 1988). A defendant must plead with "enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Rogers v. McDorman*, 521 F.3d 381, 385-86 (5th Cir. 2008) (quoting *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999)).

In a diversity case, substantive state law determines what constitutes an affirmative defense. *See, e.g.*, *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 610 (5th Cir. 2007) (citing *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986)). Louisiana Code of Civil Procedure Article 1005 sets out a list of affirmative defenses: "The answer shall set forth affirmatively

---

[2] In this court, Tauch moved for, and we granted, a remand to the district court "for the limited purpose of determining the price paid for the sale and assignment, and, if necessary determination of appellant's right to extinguish judgment under Louisiana Civil Code-article 2652." On March 12, 2013, the district court issued an order concluding "that Article 2652 does apply to this case, and that Tauch has a right to extinguish the Judgment against him by paying Baron 55% of the total amount due under the Judgment, plus the costs and interest listed in the Amended judgment." The parties do not raise this issue on appeal.

[3] For the sake of clarity, going forward we refer to the orders and reasoning of both district court judges as those of a single "district court" and we refer to "Regions" as "Baron."

negligence, or fault of the plaintiff and others, duress, error or mistake, estoppel, extinguishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, and any other matter constituting an affirmative defense." LA. CODE CIV. PROC. ANN. art. 1005 (2012); *see also Trinity Carton Co., Inc. v. Falstaff Brewing Corp.*, 767 F.2d 184, 193 n.15 (5th Cir. 1985). "It is well-settled in Louisiana law" that the list is "illustrative, not exclusive." *Bienvenu v. Allstate Ins. Co.*, 819 So. 2d 1077, 1079 (La. Ct. App. 2002). Similarly, a claim is not automatically an affirmative defense simply because it falls within an enumerated category; it is a fact-specific inquiry, dependent on the circumstances of a case. *Id.* at 1080. An affirmative defense "raises a new matter, which assuming the allegations in the petition are true, constitutes a defense to the action." *Id.*

However, "a technical failure to comply precisely with Rule 8(c) is not fatal." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013) (citing *Aunt Sally's Praline Shop, Inc. v. United Fire & Cas. Co., Inc.*, 418 F. App'x 327, 330 (5th Cir. 2011) (unpublished) (citing *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983))). A defendant does not waive a defense if it was raised at a "pragmatically sufficient time" and did not prejudice the plaintiff in its ability to respond. *Rogers*, 521 F.3d at 386. A district court has discretion to determine whether the party against whom the defense was raised suffered prejudice or unfair surprise as a result of the delay. *Levy Gardens*, 706 F.3d at 633.

We review a district court's grant of summary judgment and interpretation of state law *de novo*. *Levy Gardens*, 706 F.3d at 628. We review a district court's decision to prevent a party from untimely pleading an affirmative defense for abuse of discretion. *Aunt Sally's*, 418 F. App'x at 330-31; *see also Levy Gardens*, 706 F.3d at 633.

A.

No. 11-30846

We ask first whether Tauch's claim that First KT made payments that reduced the amount Tauch owes constitutes an affirmative defense under Louisiana law. Consistent with Louisiana Article 1005's statutory clause on extinguishment of obligation, Louisiana courts have held, in numerous contexts, that "setoff" is an affirmative defense that must be specifically pleaded. *Town of Basile v. Clark*, 769 So. 2d 591, 597 (La. Ct. App. 2000) (workers' compensation claim); *Terro v. WMCO, Inc.*, 619 So. 2d 639, 644 (La. Ct. App. 1993) (same); *C&D Pressure Testing, Inc. v. Estate of Darbonne*, 469 So. 2d 1170, 1173 (La. Ct. App. 1985) (suit by corporation to recover from estate on loans corporation had made to decedent); *Jacobs v. Grayson*, 432 So. 2d 1036, 1038 n.4 (La. Ct. App. 1983) (purchaser's action against vendor for damages for renting purchaser's house without permission); *Nat'l Am. Bank of New Orleans v. Purvis*, 407 So. 2d 754, 757 (La. Ct. App. 1981) (suit by holder of promissory note against makers of note for failure to pay installments due on note).

Tauch cites *Buck's Run Enter., Inc. v. Mapp Const., Inc.*, 808 So. 2d 428, 431 (La. Ct. App. 2001), to contend that "offset/setoff 'takes place by operation of law when two persons owe each other sums of money or quantities of fungible things in kind, and these sums are quantities that are liquidated and presently due.'" However, the court used that language to define "compensation by operation of law," which is a type of setoff that was at issue, and pleaded as an affirmative defense, in that case. *Id.* at 431-32. Not inconsistently, the term setoff is used flexibly in numerous contexts, including where only one party owes a debt and where the offset is analogous to a credit or payment. *See Youn v. Maritime Overseas Corp.*, 605 So. 2d 187, 205 (La. Ct. App. 1992) (using "setoff" and "credit" interchangeably to refer to one party claiming a reduction of the amount of its liability and calling it an affirmative

7

defense), *judgment set aside in part on other grounds by* 623 So. 2d 1257 (La. 1993).

Moreover, Louisiana courts have held that setoff is an affirmative defense in cases similar to this one. In *Fontenot v. LaFleur*, 281 So. 2d 868, 869-70 (La. Ct. App. 1973), an employer sued an employee and his wife to recover on a promissory note they executed and made payable to the employer. The defendants alleged that they were entitled to "credits or setoffs" based on commissions paid to the plaintiff's account. *Id.* at 870. The court stated: "Applicable here also is the rule that a defense of payment or set off is an affirmative defense which must be specially pleaded and proved by the defendant. The promissory note produced by plaintiff constitutes prima facie proof of defendants' indebtedness to plaintiff. The burden of proof rests on defendants to show that they are entitled to credits or set offs in addition to those acknowledged by plaintiff." *Id.* (internal citations omitted); *cf. KWP Fin. I, Inc. v. Harlan*, No. 96-50381, 100 F.3d 953, 1996 WL 625414, at *1 (5th Cir. 1996) (per curiam) (unpublished) (in an appeal from summary judgment on a promissory note and guaranty, finding that "[c]laims of set-off are affirmative defenses which must be raised in defendant's first responsive pleading, or they are lost") (citing *Davis v. Odeco*, 18 F.3d 1237, 1245 (5th Cir. 1994)). Similarly, in *Mayard v. Mayard*, 16 So. 3d 466, 466 (La. Ct. App. 2009), the plaintiff filed suit against her ex-husband to recover from his retirement under a settlement agreement. The court characterized the defendant's claim that the recovery should be reduced as an affirmative defense because the defendant's assertion merely sought to reduce his liability and thus the plaintiff's recovery. *Id.* at

468-69. The reduction provision in the Guaranty fits within the Louisiana courts' description of affirmative defenses, including setoff, offset, and credit.[4]

Louisiana courts have held that "payment" also is an affirmative defense. *Touro Infirmary v. Marine Med. Unit, Inc.*, 699 So. 2d 90, 93 (La Ct. App. 1983). Tauch cites *Paul Piazza & Son, Inc. v. Sider*, 427 So. 2d 672, 673 (La. Ct. App. 1983), to define payment as "a special or affirmative defense in a suit on open account." However, that case stands for the proposition that where a plaintiff sues a defendant for an amount the defendant owes, the defendant's claim that he made payments that reduce that amount is an affirmative defense. *Id.* at 672-73. The case does not limit the defense of payment to those facts; it merely states that in such a case it is an affirmative defense that the defendant must plead. *Id.* at 673.

Louisiana courts have characterized payment as an affirmative defense in cases similar to this one. In *Preferred Inv. Corp. v. Denson*, 251 So. 2d 455, 456 (La. Ct. App. 1971), the assignee of a promissory note filed suit against the maker of a note to recover the balance on the note. The trial court found that the plaintiff had failed to prove what balance the defendant owed on the note after payments the defendant had made. *Id.* at 457. The appellate court reversed, explaining that "[p]ayment is an affirmative defense; it must be specially pleaded, and the burden of proving it rests upon the defendant or the party claiming the benefit of payment either in whole or in part . . . . [S]ince

---

[4] Tauch's early filings in fact themselves repeatedly acknowledge and characterize the reduction in the Guaranty amount as an "offset": "Regions' motion is based on the assumption that Tauch's guaranty obligation is unqualified, absolute, and without any offset whatsoever"; "[s]ubsection (a) in Section 1 of the Loan Agreement explicitly permits a dollar-for-dollar offset for funds advanced as working capital (DIP loans) to the Beechgrove entities"; "Regions motion . . . merely states that–assuming no offset under Section 1"; "[e]ven assuming that Regions' calculation . . . with no offset . . . is correct"; "[t]he Guaranty Agreement in Section 'D' provides for offsets"; "facts concerning offset payments made pursuant to the Limited Guaranty"; "[c]orrespondence . . . regarding offset payments."

plaintiff was in possession of the note and had alleged an unpaid balance owed thereon by defendant-maker, it was not incumbent upon plaintiff to prove the balance owed on the note, and the burden was instead upon defendant to plead and prove the defense of payment." *Id.* at 458; *see also Am. Bank v. Saxena*, 553 So. 2d 836, 839 (La. 1989) (defining alleged payments on promissory notes as an affirmative defense that the pleader of the payment has the burden to prove); *Gulf Coast Bank & Trust Co. v. Donnaud's Inc.*, 759 So. 2d 268, 272 (La. Ct. App. 2000) (explaining that once a holder of a promissory note produces the note, he is entitled to the face amount on the note, and a claim of prior payments made on the note is an affirmative defense that the defendant must prove). Thus, Tauch's claim that First KT made payments that reduced his amount due under the Guaranty is an affirmative defense. First KT's default on the loan triggered Tauch's responsibility for the full amount of the Guaranty; Tauch asserts that the balance due was reduced by certain payments First KT made on the property—such circumstances fit within the Louisiana courts' definition of payment as an affirmative defense.

Tauch relies on our recent decision in *Levy Gardens*, 706 F.3d at 632-33. There, an insured filed suit against its title insurer for damages that resulted from a zoning encumbrance on a property it planned to develop. *Id.* at 626. The district court granted partial summary judgment for the plaintiff, but awarded it only partial damages because of a provision of the policy that restricted liability to a certain amount. *Id.* at 632. The plaintiff argued that the policy provision was an exclusion and thus an affirmative defense that the defendant had failed to timely plead. *Id.* We held, in part:

> Section 8 is the only section available for determining the extent of liability—it is not an affirmative defense in the way an exclusion is an affirmative defense. . . . It is not a defense to liability; rather, it is a *description of the extent of liability, as defined in the policy*, for the loss or damage once liability is found. Furthermore . . . it is left up to the

discretion of the trial court to determine whether the party against whom the unpleaded affirmative defense has been raised has suffered prejudice or unfair surprise. . . . Even if Section 8 were an "affirmative defense," the district court could not have abused its discretion because, the entire principal policy being only four pages long, Levy Gardens could not have been prejudiced or unfairly surprised.

*Id.* at 632-33 (emphasis added).

*Levy Gardens* is distinguishable. The liability provision there contained two options for maximum liability under the policy. *Id.* at 626 ("The extent of liability of the Company for loss or damage under this policy shall not exceed the least of (i) the Amount of Insurance . . . (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy . . . ."). In other words, in order to make its prima facie case, the plaintiff had to plead that the damage was covered under the policy and that it was covered to the fullest extent, the greater of the two options. *Id.* at 632-33. Had the plaintiff not done that, the court could not have determined the amount of the plaintiff's entitlement under the policy. Thus, in *Levy Gardens*, the only clause describing liability did not raise a new matter outside of the complaint—it was fundamental to the complaint. *Id.* at 632-33.

Here, by contrast, Baron simply had to allege in its complaint that there was an event of default, which is defined in the Loan Agreement, not in the Guaranty. That triggered Tauch's obligation for the full amount under the Guaranty. Had Baron not alleged anything else, the court would have been able to determine the extent of Baron's entitlement (the full amount). Thus, even though the two paragraphs–the one describing the extent of liability and the one describing any potential credit–appear in the same section of the Guaranty, they are two distinct provisions. The latter, like the affirmative defenses of payment and setoff, the district court correctly held was not a

necessary part of Baron's complaint. *See Saxena*, 553 So. 2d at 839; *Fontenot*, 281 So. 2d at 869-70; *Donnaud's*, 759 So. 2d at 272.

Furthermore, in *Levy Gardens*, 706 F.3d at 633, the district court had found that, even if the exclusion were an affirmative defense, there was no prejudice or unfair surprise to the plaintiff, a decision that is reviewed for abuse of discretion. Here, the district court found that there was prejudice to Baron.

B.

We turn next to whether the district court abused its discretion in preventing Tauch from untimely raising First KT's alleged payments because the delay caused prejudice to Baron. *Rogers*, 521 F.3d at 386. Unfair surprise and prejudice are central concerns underlying the requirement that a defendant timely plead affirmative defenses. *Ingraham*, 808 F.2d at 1079. Plaintiffs must be aware of issues outside of their petitions so that they can prepare oppositions and adjust their cases in light of new facts and issues. *Hebert v. ANCO Insulation, Inc.*, 835 So. 2d 483, 492 (La. Ct. App. 2002). Whether there was unfair surprise or prejudice is a fact-specific inquiry based on the circumstances of the case. *Woodfield*, 193 F.3d at 362; *compare Levy Gardens*, 706 F.3d at 633 (holding that district court did not abuse its discretion in finding no unfair surprise or prejudice because the policy was only four pages long and could not have been "hidden away" to be raised later in a prejudicial manner); *Pasco ex. rel Pasco v. Knoblauch*, 566 F.3d 572, 577-78 (5th Cir. 2009) (explaining that defendant did not waive an affirmative defense by not raising it until summary judgment stage because there was no evidence of prejudice and delay was due to the unusual circumstances and history of the case); *Rogers*, 521 F.3d at 386 (finding that defendants did not waive an affirmative defense because their answers specifically pleaded plaintiffs' conduct as an affirmative defense, plaintiffs contested the applicability of the

defense in a pretrial brief, and plaintiffs knew that their conduct would form the basis of the defense), *with Aunt Sally's*, 418 F. App'x at 331 (holding that district court did not abuse its discretion in finding unfair surprise and prejudice because litigating the defense would have been fact intensive and required additional factual development); *Ingraham*, 808 F.2d at 1079 (noting unfair surprise because had plaintiffs known of affirmative defense they would have developed facts and evidence to prove other theories and damages).

Here, the district court found that Tauch's failure to raise First KT's alleged payments until after Baron's summary-judgment motion "unquestionably prejudiced" Baron in its ability to respond because the claim would require proof of additional facts beyond the face of the complaint, the general allegations in Tauch's answer failed to provide any notice that defenses might be raised as the case progressed, all of the critical pretrial deadlines had passed or were about to expire, and even at the late date that Tauch raised his payment claim he did not request leave to amend.

Tauch's claim that First KT made payments that reduced the amount Tauch owed under the Guaranty is fairly classified as an affirmative defense under Louisiana law. Furthermore, the district court did not abuse its discretion in finding that Tauch was long familiar with the payment claim he sought to raise, that he failed to raise it in a pragmatically sufficient time, and that the delay prejudiced Baron in its ability to respond to the claim.

Therefore, we AFFIRM the district court.